JUSTICE RICE,
concurring in part and dissenting in part.
¶57 I concur with the Court’s resolution of the cross appeal, but dissent from the Court’s reversal of the District Court on the appeal issues. I do not believe that Farmers Union was required to provide notice of the 1996 change in the method it calculated Robertuses’ premium for UIM coverage.
¶58 The Court reasons that Holeman II “did not announce a new rule” permitting stacking of single-policy coverages because previous, generalized public policy statements against provisions which “defeated] coverage for which the insurer has received valuable consideration,” ¶ 36, were sufficient enough to communicate the specific message that anti-stacking provisions would not be enforced. According to the Court, even though the Robertuses’ pre-1996 policy contained an explicit anti-stacking provision, “Robertus would have been able to stack seven UIM coverages for which he paid separate premiums under the pre-1996 policy,” ¶ 38, despite the fact that no case or statute then permitted Robertus to ignore the anti-staking provision of his single policy. In my view, this is not a fair rendering of the law as it stood in 1996 and places a divination requirement upon Farmers Union which is unreasonable.
¶59 The pre-1996 policy contained express anti-stacking language notifying the Robertus family that only one $300,000 payment was *173 available under their single Farmers Union policy. At the time Farmers Union changed its pricing structure to charge a single premium for UIM coverage on all vehicles, Montana law had not prohibited this anti-stacking provision. Bennett, decided in 1993, did not apply to this policy. Although we offered the observation eleven years later in Dempsey that anti-stacking policies had been “discouraged” in Bennett, the actual holding in Bennett permitted stacking of two separate policies for which separate premiums were paid. Bennett, 261 Mont. at 390, 862 P.2d at 1149 (“Bennett could reasonably expect to recover damages up to the limit of both policies under which she was an insured and for which separate premiums had been paid.”) Beyond that, Bennett’s general statement of public policy, that “an insurer may not place in an insurance policy a provision which defeats coverage,” Bennett, 261 Mont. at 389, 862 P.2d at 1148, was certainly not a broad prohibition against all anti-stacking provisions. Indeed, two years later, we rejected stacking of coverages in Chilberg v. Rose, 273 Mont. 414, 417, 903 P.2d 1377, 1379 (1995), because the injured party was a passenger in a vehicle owned by an individual with three separate policies covering three separate vehicles. Holeman I, decided in 1996, merely determined that § 33-23-203, MCA, did not prohibit stacking of UIM coverages. Holeman I did not hold that UIM coverages could be stacked if separate premiums were charged for each vehicle and, as the Court correctly observes, “Holeman I did not discuss whether Montana law otherwise prohibited anti-stacking provisions for UIM coverage.” ¶ 35. Nonetheless, the Court concludes that a clear rule had somehow emerged from this uncertain precedent so that Holeman II “did not announce a new rule.” I must disagree. There remained uncertainty in the law which generated considerable litigation over this issue. It was not until 1998, when Holeman II held that UIM coverages could be stacked because “separate premiums were charged for coverage of each motor vehicle listed within the policy,” Holeman II, ¶ 47, that the rule applicable to this case emerged. That was after Farmers Union had changed the premium structure of the Robertus policy.
¶60 The Court’s decision begs an interesting practical question. Given the facial validity of the pre-1996 policy under then-existing law, just what notice would Farmers Union have been required to give of the policy change at that time? Are insurance companies really required to give notice that they are revising a policy in a manner which does not change existing coverages, but so that, in the event the law changes in the future, the coverages in the policy will remain the same *174 as currently provided? Are they supposed to notify insureds of policy changes made for the purpose of confirming an existing belief that an explicit provision of the policy which requires payment of the UIM limits only once is legal? Neither statute nor caselaw require that insurers give notice of such “nonchanges” in policy coverages for the purpose of satisfying potential future legal developments. Here, the Court takes the easy way out-it declares that Farmers Union’s notification of the change in premium was “inadequate,” but offers not insight regarding how Farmers Union could have provided “adequate” notice under the law as it existed in 1996.
¶61 Farmers Union should not be held retroactively liable for its failure to comply with a rule pronounced subsequent to its actions in 1996. Although Dempsey made the stacking rule retroactive, the purpose of retroactivity is to apply the rule to pending cases-it does not require that Farmers Union bear responsibility for a rule announced years after it acted. I would affirm the District Court.